IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW P. KALICK, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| | CIVIL NO. 13-6456 (JBS/JS) |
| v. | |
| | **OPINION** |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

Appearances:

Andrew P. Kalick, Pro Se
47 George Street
Mount Ephraim, NJ 08059

Jennifer J. McGruther, DAG
State of New Jersey
Department of Law & Public Safety
Division of Law
25 Market Street
P.O. Box 112
Trenton, NJ 08625
    Attorney for Defendant Rowan University Board of Trustees

**SIMANDLE**, Chief Judge:

## I.    INTRODUCTION

This matter is before the Court on Defendant Rowan

University Board of Trustees' (hereinafter, "Rowan University"

or "Rowan")[1] motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). [Docket Item 12.] Plaintiff's claims stem from Defendant's alleged refusal to release Plaintiff's physical degree or official transcript despite his eligibility to receive same, as well as Rowan's alleged failure to recognize certain credits Plaintiff completed prior to enrolling at Rowan or recognize Plaintiff's completion of certain course requirements. Plaintiff's Complaint originally asserted claims against Rowan University and a host of federal agencies and officials, including the United States Department of Veterans Affairs and the United States Department of Education. Plaintiff has voluntarily dismissed all claims against the federal parties.

Defendant alleges that subject matter jurisdiction is lacking because Plaintiff's remaining claims do not arise from federal law and because Rowan is an arm of the State entitled to sovereign immunity. Further, Rowan argues it has not been served with the claim as required by New Jersey law and that the

---

[1] For the purposes of the instant motion, the Court will construe Plaintiff's claims against the "Rowan University Board of Trustees, in their official capacities," as claims against Rowan University. In considering whether Plaintiff states a procedural or substantive due process claim, the Court construes Plaintiff's Complaint as an attempt to assert a cause of action against Rowan University pursuant to 42 U.S.C. § 1983 for actions under color of state law. See Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005). Further, "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)) (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n.55 (1978)).

2

Complaint fails to state a claim upon which relief can be granted. The principal question presented is thus whether this Court has subject matter jurisdiction over Plaintiff's remaining claims against Rowan University.

For the reasons discussed below, the Court finds that it lacks subject matter jurisdiction and will grant Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) without prejudice.

## II.   BACKGROUND

### A. Facts

The following facts, gleaned from Plaintiff's prolix Complaint, are accepted as true for the purposes of the instant motion.

This is a dispute about tuition payments, college credits and grades awarded at a state college. Plaintiff alleges that Defendant Rowan University failed to provide him with his degree and/or transcript after he successfully completed the requirements for an undergraduate degree. (Compl. [Docket Item 1] ¶¶ 13a, 13f, 14a, 18c, 24h.) It appears from Plaintiff's Complaint that Rowan is withholding Plaintiff's degree and transcript in part due to a dispute over tuition payments. (Id. ¶¶ 11d, 11e, 11g.) Plaintiff is a veteran entitled to educational benefits from the Department of Veteran Affairs ("VA"). (Id. ¶ 4a.) Accordingly, while Plaintiff was enrolled at

Rowan, the VA paid to Rowan a portion of Plaintiff's educational expenses based on reports the VA received from Rowan regarding tuition and fees. (Id. ¶¶ 11c, 11d, 11f, 11g, 11j, 13a, 13j, 13m, 18b, 18d.)

Plaintiff asserts that after he exhausted his "Chapter 30" benefits, he was entitled to payment by the VA of 70 percent of his tuition and fees under "Chapter 33." (Id. ¶¶ 13l, 15c.) Plaintiff claims that Rowan was paid in full for his tuition and fees during the "pendency of Chapter 30 benefits." (Id. ¶¶ 11d, 13q, 13r.) However, Plaintiff does not specify what amount was allegedly paid or what amount remains due. He only alleges that Rowan "has not refunded payments made to it under Chapter 33" and "has not incurred any loss with respect to benefits administered under Chapter 33." (Id. ¶¶ 13t, 13w.) Despite noting that his Chapter 33 benefits only covered a percentage of his tuition and fees, Plaintiff claims that "Rowan reported to VA tuition and fees charged (to Plaintiff) that were completely covered by VA (even at the 70% rate)." (Id. ¶ 13m.) As such, Plaintiff notes that "any possible allegation of debt would be exclusively to the university." (Id. ¶ 13l.) Plaintiff, however, claims he is "not indebted to Rowan in any manner." (Id. ¶ 13w.)

Plaintiff alleges a fraudulent scheme between Rowan and the VA through which Rowan was unjustly enriched. Plaintiff asserts that Rowan either "employed" or colluded with the VA, so the "VA

4

would (and did) claim indebtedness by Plaintiff to VA as a result of courses allegedly not counting toward graduation." (Id. ¶¶ 11b, 13k.) Plaintiff claims that Rowan "intentionally misrepresented that Plaintiff was . . . taking courses that didn't count toward graduation" (id. ¶ 11b) and underreported his tuition and fees to the VA. (Id. ¶¶ 11c, 11d, 11e, 11g.)

Moreover, Plaintiff alleges that certain courses he enrolled in should have counted toward graduation, but did not. (Id. ¶¶ 11b, 13j, 24c.) Specifically, Plaintiff claims that although he received a passing grade in a music history class, Rowan, "after the fact, removed the course from Plaintiff's online degree evaluation." (Id. ¶ 14d.) Plaintiff further claims that some professors either intentionally awarded him failing grades or developed grading schemes that unfairly prejudiced him. (Id. ¶¶ 14d, 14e, 14f, 14g.)

Plaintiff also alleges that Rowan did not allow certain credits obtained prior to enrolling to transfer to Rowan, in violation of the "New Jersey Transfer Act." (Id. ¶¶ 24a, 24b, 24f, 24g.) Plaintiff alleges that he "accepted Rowan's offer of enrollment" based on Rowan's acceptance of his "official course transfer evaluation," before subsequently receiving a course requirement outline that "did not comport with the NJ Transfer Act." (Id. ¶ 24f.) Plaintiff claims that Rowan violated his due process rights by not conducting a hearing as to the transfer of

certain credits where he could call and confront witnesses. (Id. ¶ 24g.) Additionally, "[w]hen Plaintiff attempted to avail himself of the administrative remedies under both 'grade dispute' and 'NJ Transfer Act' violations, he was insulted and mocked, and/or ignored by every Rowan University figure." (Id. ¶ 14l.) Instead of permitting administrative remedies, Rowan invited litigation. (Id. ¶ 14m.)

Despite Plaintiff's allegations that Rowan manipulated its course requirements to obtain additional payments from Plaintiff or the VA, Plaintiff alleges that he is eligible to receive a degree. (Id. ¶¶ 13e, 13f.)

**B. Procedural History**

On October 28, 2013, Plaintiff filed a complaint against the United States, the United States Department of Veterans Affairs, the United States Department of Education, and various individuals associated with those entities,[2] claiming that the United States Department of Veterans Affairs violated 38 U.S.C. §§ 1110 and 1155 and that those statutes are unconstitutional.[3] (Compl. ¶¶ 2a, 4a.) The Complaint also asserts various state law

---

[2] In his Complaint, Plaintiff named as defendants the following individuals in their official capacities: Eric Shinseki, Secretary of Veterans Affairs; Allison Hickey, Under Secretary of Veterans Affairs, Veterans Benefits Administration; Tom Murphy, Department of Veterans Affairs, Director of Compensation and Pension; and Arne Duncan, Secretary of Education.

[3] 38 U.S.C. §§ 1110 and 1155 discuss the eligibility criteria for veterans' benefits for service-connected disabilities and the schedule for rating such disabilities.

tort and contract claims against the "Rowan University Board of Trustees, in their official capacities." Plaintiff voluntarily dismissed his claims against all federal defendants on January 27, 2014, leaving Rowan as the only remaining defendant. [Docket Item 21.]

Plaintiff asserts the following causes of action, all arising under New Jersey law, against Rowan: (1) common law fraud (id. ¶ 11); (2) conversion (id. ¶ 13); (3) breach of contract/violation of the New Jersey Transfer Act (id. ¶ 14); (4) tortious interference with prospective business and economic advantage (id. ¶ 16); (5) unjust enrichment (id. ¶ 18); (6) trespass to chattels (id. ¶ 19); (7) breach of implied covenant of good faith (id. ¶ 20); (8) intentional infliction of emotional distress (id. ¶ 21); (9) civil conspiracy/collusion (id. ¶ 22); (10) breach of fiduciary duty (id. ¶ 23); and (11) negligent misrepresentation of material fact (id. ¶ 24).

Rowan filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). [Docket Item 12.] Plaintiff filed a response [Docket Item 19], and Rowan filed a reply. [Docket Item 22.] This motion is decided upon these submissions without oral argument pursuant to Fed. R. Civ. P. 78.

**III. STANDARD OF REVIEW**

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) which is filed prior to

answering the complaint is considered a "facial challenge" to the court's subject matter jurisdiction. Cardio-Med. Assocs. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 75 (3d Cir. 1983). This is distinct from a factual attack on the court's subject matter jurisdiction which can only occur after the answer has been served. Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In deciding a Rule 12(b)(1) motion to dismiss which is filed prior to an answer, the court must "review only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." Licata v. U.S. Postal Serv., 33 F.3d 259, 260 (3d Cir. 1994).

## IV. DISCUSSION

Rowan argues that this Court does not have subject matter jurisdiction because Plaintiff's remaining claims do not arise from or implicate federal law. Rowan further argues that it is an arm of the state and therefore is entitled to sovereign immunity. Moreover, Rowan asserts that it has not been served a notice of claim as required by New Jersey law, and Plaintiff's Complaint fails to state a claim upon which relief can be granted.

Plaintiff responds that this Court has subject matter jurisdiction because Rowan violated Plaintiff's substantive and procedural due process rights and his claims substantially rely

8

upon questions of federal law. Plaintiff further asserts that Rowan is not entitled to sovereign immunity, that he need not comply with the notice of claim provisions under New Jersey law, and that his Complaint sufficiently states claims upon which relief may be granted.

### A. Subject Matter Jurisdiction

Plaintiff asserts that this Court has subject matter jurisdiction for two reasons: (1) Plaintiff's substantive and procedural due process rights were violated; and (2) federal law is sufficiently involved in Plaintiff's claims to invoke federal question jurisdiction.

When a court is faced with 12(b)(1) and 12(b)(6) motions to dismiss, as a general rule, the proper procedure is to consider dismissal on the jurisdictional ground first, "for the obvious reason that if the court lacks jurisdiction to hear the case then a fortiori it lacks jurisdiction to rule on the merits." Mortensen, 549 F.2d at 895 n.22. Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

> An action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition.

Lindy v. Lynn, 501 F.2d 1367, 1369 (3d Cir. 1974) (citations omitted). "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 813 (1986). For federal jurisdiction to attach to state law claims, a substantial, disputed question of federal law must be a necessary element of a well-pleaded state claim. Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005); Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27–28 (1983).

Plaintiff asserts that "subject-matter jurisdiction is based on 28 U.S.C. § 1331 because [Rowan] violated Plaintiff's substantive and procedural due process rights guaranteed and protected by the U.S. Constitution." (Pl.'s Br. [Docket Item 19] at 8.) Plaintiff alleges that "the fact of whether or not a debt exists as to Rowan" is a dispute of constitutional dimension. (Id. at 11.)

For the reasons now discussed, Plaintiff's claims about tuition charges, grades and academic credits all arise under state law and do not state a plausible basis for invoking federal question jurisdiction under 28 U.S.C. § 1331. Sticking a conclusory label of constitutional due process violation upon a state tort or contract claim does not convert this case into a federal question case.

10

To state a claim of a procedural due process violation, a plaintiff must allege (1) an asserted individual interest encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) that the procedures available denied him or her of "due process of law." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (citing Robb v. City of Phila., 733 F.2d 286, 292 (3d Cir. 1984)). To have a protected property interest, "a person clearly must have more than an abstract need or desire for it" or "a unilateral expectation of it," but rather must have "a legitimate claim of entitlement to it." Robb, 733 F.2d at 292. Courts look to state law to determine whether an asserted property interest exists. Dee v. Borough of Dunmore, 549 F.3d 225, 229-30 (3d Cir. 2008).

"To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest." Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1292 (3d Cir. 1993). The "core of the concept" of due process is "the protection against arbitrary action." County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998). It is well-settled that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" Id. at 846 (citing Collins v. Harker Heights, 503 U.S. 115, 129 (1992)); DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189 (1989). And, substantive

due process is violated by executive action only when it "can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." Collins, 503 U.S. at 128.

The Court finds that Plaintiff has failed to raise a claim arising under the U.S. Constitution or other federal law as required for § 1331 jurisdiction. Plaintiff merely asserts legal conclusions, unsupported by facts, that his due process rights were violated by Rowan. Specifically, the "Subject Matter Jurisdiction" section of the Complaint states that "[t]his Court has jurisdiction of the state law claims by virtue of Rowan violating federal law/Constitution." (Compl. ¶ 2f.) Moreover, the first sentence of the "Rowan (Common Law Fraud)" section states, "Due Process violations of the Constitution are incorporated throughout and applies to Rowan through the Fourteenth Amendment." (Id. at 45.) The Court is unable to determine whether Plaintiff refers to substantive or procedural due process, let alone what protected interest he contends was implicated. A conclusory allegation of federal question jurisdiction, untethered to some plausible federal statutory or constitutional basis, does not suffice to confer subject matter jurisdiction.

The portion of Plaintiff's Complaint that asserts his due process right to a hearing focuses on Rowan's alleged failure to honor certain credits completed prior to his enrollment in

violation of the "New Jersey Transfer Act," N.J.S.A. 18A:62-46 to 18A:62-51. The "New Jersey Transfer Act" governs the transfer of credits between state universities and directs public institutions of higher learning to enter into a collective statewide transfer agreement that "provides for the seamless transfer of academic credits to a baccalaureate degree program from a completed associate of arts degree program." N.J.S.A. 18A:62-46. The Act requires the transfer agreement to include "policies and procedures for the implementation of an appeals process for students and institutions to resolve disputes regarding the transfer of academic credits." Id. Plaintiff has not identified anything in the text of the Act that would entitle him to a hearing at which he could call and confront witnesses. Furthermore, Plaintiff acknowledges in his Complaint Rowan's claim that the Commission on Higher Education (now the Office of the Secretary of Higher Education) has found that Rowan is operating in compliance with the "NJ Transfer Act." (Compl. ¶ 14n.) Thus, Plaintiff has not identified, nor has the Court found, any basis for a hearing pursuant to the text of the "New Jersey Transfer Act."

Further, the Supreme Court has recognized the substantial discretion of school authorities in state-operated universities over academic decisions regarding the completion of program requirements and the award of academic degrees. See Bd. of

13

Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78 (1978), and Regents of Univ. of Mich. v. Ewing, 474 U.S. 214 (1985). In Horowitz[4] and Ewing,[5] the Supreme Court noted that "courts are generally ill-equipped to review subjective academic appraisals of educational institutions, and admonished courts to permit university faculties a wide range of discretion in making judgments as to the academic performance of students." Hankins v. Temple Univ. (Health Servs. Ctr.), 829 F.2d 437, 444 (3d Cir. 1987).

In the present case, Plaintiff states in two conclusory sentences separated by 71 seemingly unrelated paragraphs that he was insulted, mocked, and ignored when he "attempted to avail himself of the administration remedies under both 'grade

---

[4] In Horowitz, a student was dismissed from medical school for academic reasons after several faculty members expressed dissatisfaction with the student's clinical performance. The student argued that she had not been accorded due process prior to her dismissal, but the Court found that "[t]he school fully informed respondent of the faculty's dissatisfaction with her clinical progress and the danger that this posed to timely graduation and continued enrollment." Id. at 85. The Court found no procedural due process violation because "[t]he ultimate decision to dismiss respondent was careful and deliberate." Id.

[5] In Ewing, a student brought a substantive due process claim after being dismissed from a 6-year program at a state university. The student failed an examination that was required to qualify for the final two years of the program. The Supreme Court assumed "the existence of a constitutionally protectable right in [the student's] continued enrollment," but found that the right had not been violated. Id. at 227-28. The student's dismissal "rested on an academic judgment that is not beyond the pale of reasoned academic decisionmaking when viewed against the background of his entire career at the University." Id.

dispute' and 'NJ Transfer Act' violations" and that he was not granted a hearing at which he could call and confront witnesses. (Compl. ¶¶ 24g, 14l.) The Court is unable to determine from these allegations what process Plaintiff received and what process he believes he was entitled to.[6]

Nor can it be said that the right to an adjudicatory hearing is inherent in a dispute about tuition, grading, or course credit. The Third Circuit has concluded that a formal hearing is not necessary to review academic decisions by a university; rather an "informal-give-and-take" between the student and the administrative body is adequate. Mauriello v. Univ. of Med. and Dentistry of N.J., 781 F.2d 46, 50-52 (3d Cir. 1986) (finding adequate process where student "was informed of her academic deficiencies, was given opportunity to rectify them during a probationary period before being dismissed, and was allowed to present her grievance to the graduate committee"). In his Complaint, Plaintiff describes a meeting in the office of "Chairman Weiss," during which Plaintiff had the opportunity to express his grievances regarding Rowan's alleged grading scheme

---

[6] Plaintiff also alleges that "Davey and Weiss failed to organize and/or attend a meeting as required and in accordance with Rowan policy and Plaintiff's due process rights." (Compl. ¶ 14h.) Yet, the immediately preceding paragraph of Plaintiff's Complaint discusses a meeting between Weiss and Plaintiff in Weiss' office. (Id. ¶ 14g.) Rather than providing clarity, these contradictory allegations further obscure the factual basis on which Plaintiff's due process claims may rest.

and course requirements. (Compl. ¶ 14g.) Because universities are permitted a "wide range of discretion" in making academic judgments, Plaintiff's conclusory allegations that Rowan refused to provide a hearing or "substantive administrative remedies" are insufficient to state a claim for a violation of his procedural due process rights without additional allegations regarding why Plaintiff would be entitled to a hearing and what type of hearing he was entitled to.[7]

Because Plaintiff's Complaint discusses his disagreement with a multitude of decisions by Rowan officials or faculty members including the grades he received, the transfer (or non-transfer) of certain credits, and his apparent indebtedness, Plaintiff fails to identify with any specificity which decisions by Rowan University he would have challenged, what due process right he had, and how the constitution is a source of that right. Plaintiff's allegations are insufficiently specific to state a claim for a procedural or substantive due process violation. Certainly, Plaintiff's allegation that Rowan failed to provide a hearing to challenge Rowan's prejudicial grading policies or failure to recognize certain credits prior to his

---

[7] This is not to suggest Plaintiff has no rights regarding tuition and academic disputes. He undoubtedly does, but those rights arise, if at all, under state tort and contract law, as his Complaint itself alleges.

16

enrollment does not "shock the conscience" as required to claim a substantive due process violation.

As a second theory of federal question jurisdiction, Plaintiff argues that the federal law requiring the VA to pay for his educational expenses is sufficiently involved in his state law claims to invoke federal question jurisdiction. Plaintiff asserts that "[t]he due process causes of action/claims significantly relate to Title IX and GI Bill (Chapter 30 and 33) educational allowances and involve a myriad of federal laws and regulations that directly affect and govern relief." (Pl.'s Br. at 8.)

The standard for asserting federal question jurisdiction in the context of a state-law claim that raises a federal issue is stated in Grable, 545 U.S. at 314. "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. Thus, federal question jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. "The state suit need not invoke a federal law in order to 'arise under' it for removal purposes. It is

17

sufficient that the merits of the litigation turn on a
substantial federal issue that is 'an element, and an essential
one, of the plaintiff's cause of action.'" <u>U.S. Express Lines
Ltd. v. Higgins</u>, 281 F.3d 383, 389 (3d Cir. 2002) (quoting <u>Gully
v. First Nat'l Bank in Meridian</u>, 299 U.S. 109, 112 (1936)).

Plaintiff's claims do not require the resolution of any
substantial question of federal law. The Complaint alleges that
Rowan is withholding Plaintiff's degree in connection with
tuition payments made in some part by the VA pursuant to federal
law. However, it is not clear what Plaintiff disputes regarding
these payments. Plaintiff asserts that after he exhausted his
"Chapter 30" benefits, he was entitled to payment by the VA of
70 percent of his tuition and fees under "Chapter 33." (<u>Id.</u> ¶¶
13l, 15c.) Despite noting that his Chapter 33 benefits only
covered a percentage of his tuition and fees, Plaintiff claims
that "Rowan reported to VA tuition and fees charged (to
Plaintiff) that were completely covered by VA (even at the 70%
rate)." (<u>Id.</u> ¶ 13m.) As such, Plaintiff notes that "any possible
allegation of debt would be exclusively to the university." (<u>Id.</u>
¶ 13l.) Plaintiff, however, claims he is "not indebted to Rowan
in any manner." (<u>Id.</u> ¶ 13w.) Plaintiff does not seek a
determination of his VA education benefits, and he has dropped

the federal defendants.[8] Because Plaintiff's allegations regarding the tuition payments made by the VA to Rowan are vague and contradictory, and no benefits are sought from the VA herein, the Court cannot conclude that Plaintiff's state law claims turn on a substantial question of federal law.

Furthermore, even if the Court could somehow construe the state law claims as requiring the resolution of a substantial question of federal law, it is not clear that the arrangement between the VA and Rowan resulted in the withholding of Plaintiff's degree. Thus, any question of VA benefits is not "essential" to his state law claims, as required for § 1331 jurisdiction. As noted above, Plaintiff's Complaint also discusses at length Rowan's grading scheme and refusal to accept transfer credits which caused or contributed to Rowan withholding Plaintiff's degree. He also contests failing grades that resulted in no credits in those courses, having nothing to do with payment of tuition. Accordingly, the Court is unable to conclude based on the allegations in Plaintiff's Complaint that any disputed federal question is essential to Plaintiff's claims. Therefore, Plaintiff's Complaint does not give rise to federal question jurisdiction and the Court lacks subject matter

---

[8] Moreover, even if Plaintiff sought an award of veterans' educational benefits, Congress has not conferred jurisdiction to review VA benefits determinations upon this Court, but rather upon the U.S. Court of Appeals for Veterans Claims. 38 U.S.C. § 7252(a).

jurisdiction over Plaintiff's remaining state law claims against Rowan.

## B. Supplemental Jurisdiction

28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Subsection (c) of § 1367 enumerates the four categories of claims over which a district court has supplemental jurisdiction but which the court may decline to adjudicate: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."

20

City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 173 (1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). Absent extraordinary circumstances, "jurisdiction [over plaintiff's state law claims] should be declined where the federal claims are no longer viable." Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984).

As discussed above, the Court has no federal question jurisdiction. The litigation is at an early stage. Plaintiff has not identified any extraordinary circumstances that would justify the Court's exercise of supplemental jurisdiction. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3) and these claims will be dismissed for lack of subject matter jurisdiction without prejudice to refiling in a court of competent jurisdiction, presumably the Superior Court of New Jersey.[9]

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) will be granted without

---

[9] Because Plaintiff's Complaint will be dismissed for lack of subject matter jurisdiction, the Court has no authority to decide whether Defendant is entitled to sovereign immunity; whether Plaintiff has satisfied the notice requirements under New Jersey law; or whether Plaintiff has failed to state a claim upon which relief can be granted.

prejudice. Based on the allegations in Plaintiff's Complaint, the Court does not have original jurisdiction pursuant to 28 U.S.C. § 1331 and will not exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. An accompanying Order will be entered.


**July 30, 2014**                    **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                     Chief U.S. District Judge